**FILED**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN 1 4 2005

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | No. 04 CR 298 -05 |
| | ) | |
| WILLIAM DAVIS | ) | Judge Blanche Manning |

**DOCKETED**
JAN 1 4 2005

## PLEA AGREEMENT

This Plea Agreement between the United States Attorney for the Northern District of Illinois, PATRICK J. FITZGERALD, and the defendant, WILLIAM DAVIS, and his attorney, GREG ADAMSKI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(C) as outlined in paragraph 16 below.

This Plea Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 04 CR 298-05.

This Plea Agreement concerns criminal liability only, and nothing herein shall limit or in any way waive or release any administrative or judicial civil claim, demand or cause of action, whatsoever, of the United States or its agencies. Moreover, this Agreement is limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state or local prosecuting, administrative or regulatory authorities except as expressly set forth in this Agreement.

By this Plea Agreement, PATRICK J. FITZGERALD, United States Attorney for the Northern District of Illinois, and the defendant, WILLIAM DAVIS, and his attorney, GREG ADAMSKI, have agreed upon the following:

1. Defendant acknowledges that he has been charged in Count One with conspiring and agreeing with others to commit an offense against the United States, namely: 1) to provide to an

46

inmate of a prison a prohibited object, namely heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 18, United States Code, Section 1791(a)(1); and, 2) to obtain and possess and to attempt to obtain and possess, as inmates of a prison, a prohibited object, namely heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 18, United States Code, Section 1791(a)(2), all in violation of Title 18, United States Code, Section 371 (Count 1); conspiring and agreeing with others to possess with intent to distribute and to distribute a controlled substance, namely heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 846 and Title 18, United States Code, Section 2 (Count Two); knowingly and intentionally possessing with intent to distribute a controlled substance, namely, heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 (Count Four); and with knowingly and intentionally possessing with intent to distribute a controlled substance, namely, heroin, a Schedule I Narcotic Drug Controlled Substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2 (Count Five).

2. Defendant has read the charges against him contained in the indictment, and the charges have been fully explained to him by his attorney.

3. Defendant fully understands the nature and elements of the crimes with which he has been charged.

4. Defendant will enter a voluntary plea of guilty to Count One of the indictment in this case.

5.  Defendant will plead guilty because he is in fact guilty of Count One the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt and relevant sentencing factors beyond a reasonable doubt:

From in or about November 2003 until in or about March 2004, at Chicago, Illinois, in the Northern District of Illinois and elsewhere, defendant did conspire and agree with co-defendant Michael West and others to commit an offense against the United States, namely: 1) to provide to an inmate of a prison a prohibited object, namely heroin, a Schedule I Narcotic Controlled Substance, and, 2) to obtain and possess and to attempt to obtain and possess, as inmates of a prison, a prohibited object, namely heroin, a Schedule I Narcotic Controlled Substance, in violation of Title 18, United States Code, Section 371

Specifically, the United States Bureau of Prisons, Metropolitan Correctional Center-Chicago ("MCC"), was a Federal Correctional Institution. The MCC did not allow heroin or other narcotics to be brought into its premises. In addition, the MCC records all outgoing calls made from inmates housed at the MCC and assigns each particular inmate at the MCC with their own unique phone access code ("PAC") number for the purpose of placing outgoing calls. The PAC number operates similar to a personal identification number and is non-transferrable and not to be used by anyone other than the assigned inmate.

From November 2003 to March 2004, defendant and Michael West were inmates of the MCC and as such were forbidden to possess or distribute heroin to other inmates at the MCC.

On or about January 1, 2004, defendant began selling his PAC number to Michael West in exchange for United States currency. On or about January 19, 2004, Michael West asked defendant him if he would accept a visit for him (Michael West) and whether he would be willing to "swallow"

3

some drugs during the visit to which defendant agreed. Michael West paid defendant approximately $20 for his agreement to swallow the balloon containing heroin.

In January 2004, at the direction of Michael West defendant called individual A for the purpose of having him/her send co-defendant Mable West, the sister of Michael West, approximately $1,000 via Western Union as payment for smuggling heroin into the MCC. As a result of defendant's request, on January 21, 2004, Individual A sent Mable West approximately $999.99 via Western Union.

On January 27 and 28, 2004, defendant provided Michael West with use of his PAC number to contact Denise West, also a sister of Michael West, and Mable West for the purpose of arranging with them to obtain heroin for the purpose of smuggling the heroin into the MCC. On two separate occasions on January 28, 2004, Michael West, using defendant's PAC number to call his sisters for the purpose of arranging for the delivery of heroin into the MCC. After agreeing to allow Michael West to use his PAC number, defendant overheard a conversation in which Michael West discussed buying and selling cars and asked the individuals whom he was talking to get "balloons" for the party.

In February 2004, at the direction of Michael West defendant again called individual A for the purpose of having him/her send Mable West approximately $1,000 via Western Union as payment for smuggling heroin into the MCC. As a result of defendant's request, on February 5, 2004, Individual A sent Mable West approximately $1,000.00 via Western Union.

On or about February 1, 2004, a few hours before a regularly scheduled visiting time, Michael West walked up to defendant and told defendant he was getting a visit today. Michael West also told defendant that the visitor's name was Emma Clark. On the same day, Mable West provided

4

Denise West with her (Mable West's) identification card for the purpose of allowing Denise West to pose as Mable West and gain admission into the MCC to deliver heroin. Denise West along with Emma Clark traveled to the MCC carrying heroin and smuggled the heroin into the MCC.

After Denise West and Clark gained entry into the MCC, officials informed defendant that he had a visitor. Defendant then proceeded to the inmate visitor's room where he saw Clark, sat down by her and was eventually handed a bag of chips. After being handed the bag of chips, defendant got up and proceeded to the men's restroom. Inside the men's restroom, defendant found a coin-size balloon filled with a foreign object at the bottom of the chip bag which he knew contained heroin. Defendant took the balloon, swallowed it and after being returned to his cell gave the balloon containing the heroin to Michael West.

The information in paragraph 5 is merely intended to provide a factual basis for the defendant's plea of guilty and is not intended to be a detailed statement summarizing everything that the defendant knows about the crimes with which he has been charged.

6. For purposes of applying the guidelines promulgated by the United States Sentencing Commission pursuant to Title 28, United States Code, Section 994, the parties agree on the following points:

(a) This plea agreement is governed by the November 2004 Edition of the *Guidelines Manual*.

(b) Pursuant to Guideline 2P1.2 (a)(2), the base offense level is level thirteen (13) because the object smuggled into the MCC was heroin an narcotic drug.

5

(c) Pursuant to Guideline 2P1.1(c)(1), the base offense level is increased to level 26 because the object of the offense was the distribution of a controlled substance and the resulting offense level under Guideline 2D1.1 was less than a level 26.

(d) Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if the defendant continues to accept responsibility for his actions, within the meaning of Guideline Section 3E1.1, a two-level reduction in the offense level is appropriate.

(e) Defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently, within the meaning of Guideline 3E1.1(b). Accordingly, at the time of defendant's sentencing, the government will move for an additional 1-level reduction in the offense level, provided the Court determines the offense level to be 16 or greater prior to the operation of Guideline 3E1.1(a).

(f) Based on the facts known to the government, the defendant has the following criminal history:

(i) On or about May 23, 2000, defendant was convicted of manufacturing a destructive device in the United States District Court for the Northern District of Indiana in cause number 99 M 1118 and was sentenced to serve 37 months in the custody of the Bureau of Prisons and three years of supervised release. Pursuant to Guideline 4A1.1(a) defendant receives three criminal history points for this offense.

(ii) On or about the time of the instant offense, defendant was on supervised release for the offense set forth in (e)(i) above. Pursuant to Guideline 4A1.1(d), defendant receives two criminal history points.

(v) On or about the time of the instant offense, defendant had been released from imprisonment less than two years after the offense set forth in (e)(i) above. Pursuant to Guideline 4A1.1(e), defendant receives one criminal history point.

(g) Based upon the above, the defendant has six criminal history points and his criminal history category is III.

(h) The defendant and his attorney and the government acknowledge that the above calculations are preliminary in nature and based on facts known to the government as of the time of this Agreement. The defendant understands that the Probation Department will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Sentencing Guidelines calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations.

7. Errors in calculations or interpretation of any of the guidelines may be corrected by either party prior to sentencing. The parties may correct these errors or misinterpretations either by stipulation or by a statement to the probation office and/or court setting forth the disagreement as to the correct guidelines and their application. The validity of this Agreement will not be affected by such corrections, and the defendant shall not have a right to withdraw his plea on the basis of such corrections.

7

8. Defendant understands the charge to which he will plead guilty carries a maximum penalty of 5 years' imprisonment, a maximum fine of $250,000, and any restitution ordered by the Court. Defendant understands that this charge also carries a term of supervised release of no more than three years.

9. The defendant understands that in accord with federal law, Title 18, United States Code, Section 3013, upon entry of judgment of conviction, the defendant will be assessed $100, in addition to any other penalty imposed. The defendant understands that the government will request the court to order the defendant to pay the special assessment of $100 at the time of sentencing with a check or money order made payable to the Clerk of the U. S. District Court.

10. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

(a) If defendant persisted in a plea of not guilty to the charges against him, he would have the right to a public and speedy trial. The trial could be either a jury trial or a trial by the judge sitting without a jury. The defendant has a right to a jury trial. However, in order that the trial be conducted by the judge sitting without a jury, the defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

(b) If the trial is a jury trial, the jury would be composed of twelve laypersons selected at random. Defendant and his attorney would have a say in who the jurors would be by removing prospective jurors for cause where actual bias or other disqualification is shown, or without cause by exercising so-called peremptory challenges. The jury would have to agree unanimously before it could return a verdict of either guilty or not guilty. The jury would be instructed that defendant

is presumed innocent, and that it could not convict him unless, after hearing all the evidence, and considering each count separately, it was persuaded of defendant's guilt beyond a reasonable doubt.

(c)   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded of defendant's guilt beyond a reasonable doubt.

(d)   At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them. In turn, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the court.

(e)   At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

11.   Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraph. Defendant's attorney has explained those rights to him, and the consequences of her waiver of those rights. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial.

12.   The defendant is also aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute of conviction or the manner in which that sentence was determined, in exchange for the concessions made by the United States in this Plea Agreement. The defendant also waives his right to challenge his sentence

9

or the manner in which it was determined in any collateral attack, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation.

13. Defendant understands that he may be entitled to have any disputed sentencing fact which could increase his sentence determined at a jury trial under a proof beyond a reasonable doubt standard. Defendant further understands that by pleading guilty, he agrees:

(a) To have his sentence determined under the Sentencing Guidelines;

(b) To waive having sentencing facts alleged in the indictment and found by the jury beyond a reasonable doubt;

(c) To have the Court determine his sentencing facts by a preponderance of the evidence; and,

(d) To allow the Court to consider any reliable evidence, including hearsay, in determining his sentence.

14. Defendant understands that the indictment and this Plea Agreement are matters of public record and may be disclosed to any party.

15. Defendant agrees he will fully and truthfully cooperate with the government in any matter in which he is called upon to cooperate. Defendant further agrees to provide complete and truthful information in any investigation and pre-trial preparation, and complete and truthful testimony, if called upon to testify, before any federal grand jury and United States District Court proceeding, and any related civil administrative or court proceeding. Defendant also agrees to

10

cooperate fully and truthfully in identifying assets subject to forfeiture, regardless where they may have been transferred or hidden.

16. At the time of sentencing, the government shall make known to the sentencing judge the extent of defendant's cooperation, and, assuming the defendant's full and truthful cooperation, shall move the Court, pursuant to Sentencing Guideline 5K1.1 and 18 U.S.C. §3553(e), to depart from the applicable sentencing guidelines range, and to impose the specific sentence agreed to by the parties as outlined below. Defendant understands that the decision to depart from the applicable guidelines range rests solely with the Court. However, this Plea Agreement is governed, in part, by Federal Rule of Criminal Procedure 11(c)(1)(C). That is, the parties have agreed that the sentence imposed by the Court shall include a term of imprisonment in the custody of the Bureau of Prisons equivalent to two-thirds of the low end of the applicable sentencing guideline range. Other than the agreed term of incarceration, the parties have agreed that the Court remains free to impose the sentence it deems appropriate. If the Court accepts and imposes the agreed term of incarceration set forth herein or above, the defendant may not withdraw this plea as a matter of right under Federal Rule of Criminal Procedure 11(e). If, however, the Court refuses to impose the agreed term of incarceration set forth herein, thereby rejecting the Plea Agreement, or otherwise refuses to accept the defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound thereto.

17. Defendant understands that his compliance with each part of this Plea Agreement extends throughout and beyond the period of his sentence, and failure to abide by any term of the Plea Agreement is a violation of the Agreement. He further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Plea Agreement, rendering

it null and void, and thereafter prosecute the defendant not subject to any of the limits set forth in this Agreement, or to resentence the defendant. The defendant understands and agrees that in the event that this Plea Agreement is breached by the defendant, and the Government elects to void the Plea Agreement and prosecute the defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against the defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

18. Defendant also agrees to postpone his sentencing until after the conclusion of his cooperation with the government.

19. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to this defendant.

20. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

21. Defendant agrees this Plea Agreement shall be filed and become a part of the record in this case.

22. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: 1/14/05

_____
PATRICK J. FITZGERALD
United States Attorney

_____
RICARDO MEZA
Assistant United States Attorney

_____
WILLIAM DAVIS 06069-021
Defendant

_____
GREG ADAMSKI
Attorney for Defendant

13